# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. _____** |
| **v.** | : | **DATE FILED:   _____** |
| **TEDDY YOUNG,** | : | **VIOLATIONS:** |
|     **a/k/a "T. Turan Young,"** | | **21 U.S.C. § 846 (conspiracy to distribute** |
| **AMILCAR DELACRUZ,** | : | **more than 1 kilogram of heroin and to** |
|     **a/k/a "Boca Chula,"** | | **distribute or manufacture in or near a** |
| **JORGE LEYBA** | : | **school zone - 1 count)** |
| **DANIEL PEROZO** | | **21 U.S.C. § 841(a)(1) (possession of more** |
| **STEVEN SCOTT,** | : | **than 100 grams of heroin with intent to** |
|     **a/k/a "Stevie Wonder,"** | | **distribute – 1 count)** |
| **RONNELL SCOTT** | : | **21 U.S.C. § 841(a)(1) (distribution and** |
| **SALEEM FAREED NUMAN,** | | **possession of heroin with intent to** |
|     **a/k/a "Lane,"** | : | **distribute – 13 counts)** |
|     **a/k/a "Numatic,"** | | **21 U.S.C. § 843(b) (use of communication** |
|     **a/k/a "Geez,"** | : | **facility – 18 counts)** |
|     **a/k/a "Leem,"** | | **21 U.S.C. § 856(a)(2) (establishment of** |
| **MARK HIGHTOWER** | : | **manufacturing operation – 1 count)** |
| **DAVID LEE,** | | **18 U.S.C. § 924(c) (possession of firearm** |
|     **a/k/a "Black Dave,"** | : | **during drug trafficking crime – 1 count)** |
| **EDWARD BALL** | | **Notice of forfeiture** |
| **HUGH ROGERS,** | : | |
|     **a/k/a "Huey,"** | | |
| **JAMIL JOHNSON,** | : | **UNDER SEAL** |
|     **a/k/a "Jamil Judge,"** | | |
| **DARRYL WARRING,** | : | |
|     **a/k/a "Omar,"** | | |
| **WILLIAM McCOY,** | : | |
|     **a/k/a "William Rogers,"** | | |
|     **a/k/a "Slug,"** | : | |
| **KEN MURRAY** | | |
| **THEODORE YOUNG, SR.,** | : | |
|     **a/k/a "Curly,"** | | |
| **RAFIQ YOUNG,** | : | |
|     **a/k/a "Fiq,"** | | |
| **ARTAVIUS COLEMAN,** | : | |
|     **a/k/a "Tay,"** | | |
| **FRANK ROBINSON** | : | |

# I N D I C T M E N T

## COUNT ONE

**THE GRAND JURY CHARGES THAT**:

1.       From on or about November 17, 2000, to on or about June 6, 2002,  in the

Eastern District of Pennsylvania, and elsewhere, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young,"**
**AMICLAR DELACRUZ,**
**a/k/a "Boca Chula,"**
**JORGE LEYBA**
**DANIEL PEROZO**
**STEVEN SCOTT,**
**a/k/a "Stevie Wonder,"**
**RONNELL SCOTT**
**SALEEM FAREED NUMAN,**
**a/k/a "Lane,"**
**a/k/a "Numatic,"**
**a/k/a "Geez,"**
**a/k/a "Leem,"**
**MARK HIGHTOWER**
**DAVID LEE,**
**a/k/a "Black Dave,"**
**EDWARD BALL**
**HUGH ROGERS,**
**a/k/a "Huey,"**
**JAMIL JOHNSON,**
**a/k/a "Jamil Judge,"**
**DARRYL WARRING,**
**a/k/a "Omar,"**
**WILLIAM McCOY,**
**a/k/a "William Rogers,"**
**a/k/a "Slug,"**
**KEN MURRAY**
**THEODORE YOUNG, SR.,**
**a/k/a "Curly,"**
**RAFIQ YOUNG,**
**a/k/a "Fiq,"**

**ARTAVIUS COLEMAN,**
**a/k/a "Tay," and**
**FRANK ROBINSON**

conspired and agreed together and with others known and unknown to the grand jury, to

a)      knowingly and intentionally distribute in excess of 1 kilogram of a mixture or
substance containing a detectable amount of heroin, a Schedule I controlled
substance, in violation of Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(A), and;

(b)      knowingly and intentionally distribute a mixture or substance containing a
detectable amount of heroin, a Schedule I controlled substance, in violation of
Title 21, United States Code, Section 841(a)(1), within 1,000 feet of the real
property comprising the J.B. Kelly School, a public elementary school, located at
the intersection of Hansburry Street and Pulaski Avenue in Philadelphia,
Pennsylvania, in violation of Title 21, United States Code, Section 860(a).

## MANNER AND MEANS

It was the plan and purpose of the conspiracy for the Young Heroin Organization
("YHO") to purchase heroin from various sources and then sell the heroin in and around the
Philadelphia area, in the Eastern District of Pennsylvania, for profit.

It was further a part of the conspiracy that:

2.      Defendant TEDDY YOUNG led the conspiracy and directed the activities
of the other YHO members employed and paid by him as suppliers, resellers, baggers, cut house
workers, and delivery people.

3.      Members and associates of the YHO obtained bulk heroin from sources in

New York City who transported the heroin to Philadelphia to be sold in Philadelphia by street-corner heroin sellers.

4.      Members and associates of the YHO used 5302 Wayne Avenue, Philadelphia, Pa., to store the bulk heroin, cut, process, and package it for further sale.

5.      Members and associates of the YHO used an apartment located at 7665 Washington Lane, Cheltenham, Pa., to store the bulk heroin, cut and process it for further sale.

6.      The following members and associates of the YHO played the following roles in the conspiracy:

a.      Defendant TEDDY YOUNG led the YHO, directing its bulk purchases of heroin, and distributing the heroin to persons beneath him in the hierarchy;

b.      Defendant AMILCAR DELACRUZ supplied defendant TEDDY YOUNG with bulk quantities of heroin;

c.      Defendant JORGE LEYBA and defendant DANIEL PEROZO, working in concert, supplied defendant TEDDY YOUNG with bulk quantities of heroin which LEYBA and PEROZO transported from New York City to Philadelphia;

d.      Defendants DAVID LEE, EDWARD BALL, HUGH ROGERS, DARRYL WARRING, ARTAVIUS COLEMAN, JAMIL JOHNSON, RAFIQ YOUNG, WILLIAM McCOY, and THEODORE YOUNG, SR. assisted defendant TEDDY YOUNG in  distributing kilogram quantities of heroin destined for retail sale

in Philadelphia by re-selling the packaged bundles of heroin;

e.    Defendant STEVEN SCOTT worked for defendant TEDDY YOUNG in a cut house located at 5302 Wayne Avenue in Philadelphia where he received, cut and packaged bulk quantities of heroin into smaller quantities called "bundles" for retail sale in Philadelphia.  SCOTT also rented an apartment located at 7665 Washington Lane, Cheltenham, Pa., which was also used as a cut house in which SCOTT cut and packaged heroin for the YHO when needed;

f.    Defendants RONNELL SCOTT, SALEEM FAREED NUMAN, and MARK HIGHTOWER worked for defendant TEDDY YOUNG in the cut houses located at 5302 Wayne Avenue in Philadelphia, and at 7665 Washington Lane, Cheltenham, by receiving, cutting and packaging bulk quantities of heroin into smaller quantities called "bundles" for retail sale in Philadelphia.

g.    Defendant KEN MURRAY owned the cut house located at 5302 Wayne Avenue, Philadelhia, and provided it to the defendant TEDDY YOUNG for the purpose of using the upstairs apartment as a cut house for the YHO.  MURRAY also assisted YOUNG in distributing kilogram quantities of heroin destined for retail sale in Philadelphia;

h.    Defendant FRANK ROBINSON was a member of the YHO who

received samples of heroin from defendant TEDDY YOUNG for

the purpose of testing the heroin for quality by consuming it and

then distributing the heroin to others to be sold in Philadelphia.

7. Defendants RONNELL SCOTT, SALEEM FAREED NUMAN, and MARK HIGHTOWER, while working in the cut houses, packaged heroin into small glassine packets which they stamped for sale with various names such as "Death Wish," "SUV," and "Joy Ride." The stamp names were placed on the heroin packets to promote sales of the bulk heroin that had been divided and "cut" by adding adulterants to increase the amounts for resale. Ten to 13 glassine packets were then "bundled" together with rubber bands to form a "bundle" of heroin, the unit of distribution to the resellers of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, and to achieve its objects, the following overt acts, among others, were committed in the Eastern District of Pennsylvania:

1. On or about November 17, 2000, defendant DAVID LEE possessed of 6 bundles of heroin weighing approximately 2.07 grams, stamped "Surfer Boy," and sold them to a person known to the grand jury for $400.

2. On or about November 22, 2000, defendant DAVID LEE told a person known to the grand jury that LEE only had two bundles of heroin on him, and escorted the person to the residence of defendant TEDDY YOUNG, located at 5132 Newhall Street, and obtained two additional bundles of heroin from YOUNG.

3. On or about November 22, 2000, defendant DAVID LEE possessed 4 bundles of heroin weighing approximately 1.7 grams, stamped "Surfer Boy," and sold them to a person

known to the grand jury for $400.

4.  On or about November 29, 2000, defendant DAVID LEE possessed 6 bundles of heroin weighing approximately 2.9 grams, stamped "Surfer Boy," and sold them to a person known to the grand jury for $580.

5.  On or about December 7, 2000, defendant DAVID LEE possessed 10 bundles of heroin weighing approximately 5.5 grams, stamped "Best Bet," and sold them to a person known to the grand jury for $980.

6.  On or about December 15, 2000, defendant DAVID LEE possessed 11 bundles of heroin weighing approximately 6.0 grams, stamped "Best Bet," and sold them to a person known to the grand jury for $980.

7.  On or about January 19, 2001, defendant DAVID LEE told a person known to the grand jury that LEE was a "middle man" in the heroin distributing organization.

8.  On or about January 19, 2001, defendant DAVID LEE possessed 20 bundles (260 packets) of heroin weighing approximately 10.4 grams, stamped "Quality,"and sold them to a person known to the grand jury for $1900.

9.  On or about March 29, 2001, defendant DAVID LEE possessed 10 bundles of heroin weighing approximately 5.4 grams, stamped "Kung Fu" and "SUV," and sold them to a person known to the grand jury for $950.

10.  On or about September 12, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant AMILCAR DELACRUZ in which YOUNG apologized for not having DELACRUZ's money.  DELACRUZ stated that now DELACRUZ had a problem because YOUNG had not paid him.  YOUNG said that he has been having serious problems but

that those problems should be cleared up today.  YOUNG offered to meet with DELACRUZ around 4:00 to pay DELACRUZ his money.  DELACRUZ warned YOUNG that YOUNG better have some money then.

11.     On or about September 13, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant HUGH ROGERS in which ROGERS informed YOUNG that ROGERS had $1,200 of drug proceeds for YOUNG.

12.     On or about September 15, 2001, at approximately 9:46 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant THEODORE YOUNG, SR. in which THEODORE requested 15 bundles (of heroin).  YOUNG explained to THEODORE that THEODORE would probably get his batch around 10:30 a.m.

13.     On or about September 15, 2001, at approximately 10:51 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant STEVEN SCOTT in which YOUNG told STEVEN SCOTT that his father (defendant THEODORE YOUNG, SR.) needed bundles stamped  "Natural."

14.     On or about September 15, 2001, at approximately 5:23 p.m., defendant TEDDY YOUNG had a telephonic conversation with defendant EDWARD BALL in which BALL informed YOUNG that the heroin they had sold to some others was not good, that the customers were complaining about it, and that YOUNG and BALL just needed to replace the poor quality heroin with stronger, better quality heroin.  BALL told YOUNG that the customers did not want their money back, just the heroin replaced.

15.     On or about September 16, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant DARRYL WARRING in which YOUNG told WARRING that

customers had complained about the previous batch (of heroin).  YOUNG asked WARRING if WARRING could wait about 40 minutes so that YOUNG could provide WARRING with better heroin.  WARRING agreed to wait until YOUNG could supply him with better quality heroin. Both YOUNG and WARRING agreed to distribute good quality heroin.

16.     On or about September 17, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant HUGH ROGERS in which YOUNG informed ROGERS that YOUNG could not give ROGERS heroin with the same name as before, but that he would give ROGERS heroin with another stamped name in a few minutes.  ROGERS told YOUNG that ROGERS had a customer waiting for heroin.

17.     On or about September 17, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant MARK HIGHTOWER in which HIGHTOWER told YOUNG that the heroin bundles stamped "All Natural" were complete.  YOUNG directed HIGHTOWER to prepare bundles of heroin stamped "SUV" and 20 stamped "Midnight" so that they could be sold quickly.  YOUNG told HIGHTOWER to prepare 20 or 30 bundles.

18.     On or about September 17, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant HUGH ROGERS in which ROGERS informed YOUNG that he had "eight-fifty" ($850) of drug proceeds.  YOUNG told ROGERS to give the money to YOUNG's nephew and YOUNG informed ROGERS that YOUNG would provide ROGERS with more heroin stamped "Pussy" the next day.  YOUNG told ROGERS that YOUNG was trying to collect all of the "papers" (drug proceeds).

19.     On or about September 18, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant AMILCAR DELACRUZ in which DELACRUZ and YOUNG

argued over the money YOUNG owed to DELACRUZ for heroin. YOUNG asserted that he had always paid on time and that he would get DELACRUZ the money he owed him. YOUNG argued that even when DELCRUZ provided poor quality heroin, YOUNG always paid him the money. DELACRUZ told YOUNG that DELACRUZ also had people to pay and that the money was not for him (DELACRUZ), but for the people DELACRUZ owed money to. DELACRUZ reminded YOUNG that they have worked together for three or four years. YOUNG replied that in those four years, YOUNG had given DELACRUZ a lot of money, even when the material (heroin) was bad.

20.     On or about September 25, 2001,  defendant TEDDY YOUNG had a telephonic conversation with defendant STEVEN SCOTT in which STEVEN SCOTT stated he had completed the bundles of "SUV," and that he could prepare 20 bundles stamped "Pussy" from the heroin that was left over.  To do that, however, STEVEN SCOTT said he had to stop stamping "Death" ("Death Wish") and that STEVEN SCOTT had 15 bundles of "Death" already done.  YOUNG then directed STEVEN SCOTT to give YOUNG 20 bundles of "Death" and whatever STEVEN SCOTT could get of bundles of "Pussy."

21.     On or about September 27, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant DAVID LEE confirming that the heroin YOUNG provided him was different than heroin provided previously.  YOUNG said it was "something different altogether." YOUNG told LEE that he had "something now" (new heroin) that LEE could pass out in samples.

22.     On or about September 28, 2001, at approximately 10:53 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant KENNETH MURRAY in which

MURRAY informed YOUNG that MURRAY had provided the cut house workers with keys to the cut house.  YOUNG told MURRAY that he did not have to do that and that the workers were "bitches."  MURRAY stated that it was no problem and that he left the keys on the stairs.

23.     On or about October 5, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant RONNELL SCOTT in which YOUNG asked if the bundles of heroin stamped "Natural" were done.  RONNELL SCOTT said no and that they needed rubber bands.

24.     On or about October 25, 2001, defendant STEVEN SCOTT made a telephone call to defendant TEDDY YOUNG, but before the call was connected to YOUNG, sounds of stamping are heard from STEVEN SCOTT's location.  When the call was connected, STEVEN SCOTT told YOUNG that "the eggs" (units of heroin) were 73 and not 75 (grams of heroin).

25.     On or about October 27, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant SALEEM NUMAN in which YOUNG instructed NUMAN to prepare bundles of heroin stamped "All (All That)," "SUV," 20 "Wishes (Death Wish)," and 30 "Natural."  In addition, YOUNG requested bundles stamped "Chumpies."  YOUNG and NUMAN concluded that the total was 100 bundles.

26.     On or about October 27, 2001, at approximately 12:55 p.m., defendant TEDDY YOUNG had a telephonic conversation with defendant DARRYL WARRING, in which WARRING asked YOUNG if YOUNG's dad (defendant THEODORE YOUNG, SR.) had "All That" (stamped heroin packets).  YOUNG said yes.  WARRING said that was what people on the street were talking about right now (meaning it was popular on the street).

27.     On or about October 27, 2001, at approximately 1:01 p.m., defendant TEDDY

YOUNG had a telephonic conversation with defendant THEODORE YOUNG, SR., his father. YOUNG asked THEODORE if he had "All That."  THEODORE said "yes."  After YOUNG told THEODORE what WARRING had said, THEODORE said, "They say my thing is alright, huh?"

28.     On or about October 28, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant RAFIQ YOUNG, in which RAFIQ asked YOUNG if he wanted RAFIQ to bring "only 'Dick' (stamp name) out?"  YOUNG told RAFIQ to keep it in the house but to keep everything else in the wheel (the car).  YOUNG asked how many bundles there were altogether.  An unidentified male with RAFIQ at RAFIQ's location said "110 or something."  RAFIQ told YOUNG 110 (one hundred ten bundles).

29.     On or about October 31, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant THEODORE YOUNG, SR. in which THEODORE asked if YOUNG would be "ready tomorrow" (if YOUNG would have more heroin).  YOUNG replied that he was getting more (heroin) that day.  YOUNG also stated that he "checked something last night" (tested heroin), but that YOUNG did not like it.  THEODORE stated that THEODORE had processed and packaged a total of 62 grams of heroin.

30.     On or about November 1, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant FRANK ROBINSON in which ROBINSON informed YOUNG that the heroin ROBINSON tested for YOUNG was weak.  YOUNG told ROBINSON that YOUNG was awaiting more heroin the next day, that getting heroin had been difficult lately, that the heroin YOUNG had been getting sold very quickly, and that YOUNG would call ROBINSON the next day regarding providing ROBINSON with more heroin.

31.     On or about November 2, 2001, defendant TEDDY YOUNG had a telephonic

conversation with defendant SALEEM NUMAN in which YOUNG asked how many bundles of heroin had been prepared.  NUMAN responded that about 120 bundles had been prepared. NUMAN informed YOUNG that they had prepared bundles stamped "Midnight" and "Pussy." NUMAN also told YOUNG that they had prepared bundles stamped "Dick" and "DMX" as well.

32.    On or about November 4, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant WILLIAM McCOY in which McCOY told YOUNG that "it was hot yesterday, dog.  I couldn't move or nothing," meaning that it was too hot for McCOY to sell heroin on the street yesterday.  YOUNG told McCOY that YOUNG would be down in a few hours to pick up the drug proceeds.

33.    On or about November 5, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant DANIEL PEROZO in which PEROZO informed YOUNG that defendant JORGE LEYBA was on his way down to Philadelphia to re-supply YOUNG with 400 grams of heroin.  PEROZO reminded YOUNG that YOUNG had to pay some money and to complete the transaction very quickly.

34.    On or about November 8, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant EDWARD BALL in which he asked BALL if BALL was working with the best thing (heroin) in his zones (territory).  BALL said no.  BALL said he was selling heroin stamped "CVS" and "Sunoco."  BALL told YOUNG that a person unknown to the grand jury ran that territory and that that person had about four other stamps in that area.  BALL stated that the "Sunoco" and the "CVS" were better than what the other person was selling.  YOUNG asked BALL what his customers were saying about the heroin he is working with now.  BALL said he did not have any complaints.

-13-

35.     On or about November 11, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant STEVEN SCOTT in which YOUNG instructed STEVEN SCOTT to prepare 20 bundles stamped "Death Wish" because YOUNG had a customer coming who wanted it.  YOUNG also requested 20 bundles stamped "Natural" ("All Natural") and 20 bundles of "Dick."  YOUNG stated that defendant RONNELL SCOTT could go to the cut house to pick up the bundles.  STEVEN SCOTT informed YOUNG that another person unknown to the grand jury was filling in for MARK (defendant MARK HIGHTOWER) at the cut house and working with him (STEVEN SCOTT).  YOUNG told STEVEN SCOTT that YOUNG would give RONNELL SCOTT the money and that RONNELL SCOTT should come downstairs to get it.

36.     On or about November 12, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant AMILCAR DELACRUZ in which YOUNG complained about the quality of the heroin that DELACRUZ had provided him.  YOUNG told DELACRUZ to check it out for himself.  YOUNG told DELACRUZ that he was still going to sell it and that he was going to drop off money to DELACRUZ.

37.     On or about November 13, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant AMILCAR DELACRUZ in which YOUNG made plans to meet with DELACRUZ in 30 minutes at 5th and Wyoming to pay DELACRUZ the drug proceeds owed to him.

38.     On or about November 19, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant JORGE LEYBA in which YOUNG requested that LEYBA come down to Philadelphia that evening so that YOUNG could pay LEYBA approximately $13,000 of drug proceeds.  LEYBA agreed to come to Philadelphia to meet YOUNG around 9:00 p.m., and

-14-

told YOUNG that he would bring YOUNG 500 grams of heroin.

39.     On or about December 18, 2001, defendant TEDDY YOUNG had a telephonic conversation with defendant MARK HIGHTOWER in which YOUNG instructed HIGHTOWER to go to the cut house and begin working.  YOUNG told HIGHTOWER to prepare bundles of heroin; 20 "Joy Ride" and 30 "Brand New."  YOUNG also wanted 10 "Feel Good" and 40 "Chumpies."  HIGHTOWER stated that he would begin stamping the bundles right away.

40.     On or about December 26, 2001, at approximately 9:14 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant KENNETH MURRAY in which YOUNG instructed MURRAY to leave the "sneaks" (bundles of heroin in a shoe box) at the cut house for YOUNG to pick up.

41.     On or about December 26, 2001, at approximately 10:03 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant KENNETH MURRAY in which MURRAY confirmed that he left the "sneaks" (bundles of heroin in a shoe box) in the cut house. YOUNG was appreciative and said he was on his way into the shop (the cut house located at 5302 Wayne Avenue).

42.     On or about January 1, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant RAFIQ YOUNG in which YOUNG instructed RAFIQ to receive heroin from an unknown person and then to give it to defendants EDWARD BALL and DAVID LEE.

43.     On or about January 8, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant WILLIAM McCOY in which McCOY told YOUNG that the bundles of heroin stamped "Bentley" were all sold.  McCOY told YOUNG that McCOY had

$700 of drug proceeds for YOUNG and that McCOY was going to collect $300 more from his (McCOY's) workers to give to YOUNG.

44.     On or about January 24, 2002, defendant EDWARD BALL possessed 5 bundles (65 packets) of heroin, weighing 2.9 grams, stamped "Joy Ride" and "Midnight," which he sold to a person known to the grand jury for $500.

45.     On or about February 23, 2002, at approximately 3:06 p.m., defendant TEDDY YOUNG had a telephonic conversation with defendant ARTAVIUS COLEMAN in which YOUNG asked if COLEMAN'S "boy" (drug associate) had sold all of his bundles.  YOUNG stated that he needed to know so that he could inform the workers at the cut house if they needed to prepare any bundles for COLEMAN.  COLEMAN said he would find out.

46.     On or about February 23, 2002, at approximately 7:42 p.m., defendant TEDDY YOUNG had a telephonic conversation with defendant ARTAVIUS COLEMAN in which YOUNG informed COLEMAN that YOUNG was going to meet with COLEMAN's "boy" (drug associate) in five minutes to supply him heroin.

47.     On or about February 25, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant ARTAVIUS COLEMAN in which YOUNG asked if COLEMAN wanted YOUNG to deliver heroin directly to COLEMAN or to COLEMAN's drug associate. COLEMAN and YOUNG agreed to meet each other.

48.     On or about February 26, 2002, defendant TEDDY  YOUNG had a telephonic conversation with defendant JAMIL JOHNSON in which YOUNG agreed to meet JOHNSON at JOHNSON's place of employment to supply JOHNSON with heroin for JOHNSON to sell.

49.     On or about February 26, 2002, defendant TEDDY  YOUNG had a telephonic

conversation with defendant JAMIL JOHNSON in which YOUNG told JOHNSON that he

thought he gave him 23 bundles of heroin.  JOHNSON said he thought it was 20 but he did not

count it.  YOUNG told JOHNSON he had seven more for him and that would make 30 bundles.

The two agreed to meet later so that YOUNG could give JOHNSON seven more bundles.

50.     On or about March 1, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant AMILCAR DELACRUZ in which DELACRUZ agreed to provide

YOUNG with 30 grams of heroin in about two hours, after YOUNG gathered enough money to

pay for it.

51.     On or about March 2, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant AMILCAR DELACRUZ in which DELACRUZ agreed to provide

YOUNG with 50 additional grams of heroin in about one and one-half hours.

52.     On or about March 4, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant JORGE LEYBA in which LEYBA offered YOUNG 200 grams of

heroin for $5,000.  YOUNG insisted that his money was "tight" and that he could not afford to

pay that amount for another few days.  YOUNG reminded LEYBA that YOUNG had paid

LEYBA all of the money he owed LEYBA previously.  YOUNG also stated that although he had

some money, he needed it to pay YOUNG's workers because it was the first of the month.

YOUNG expressed concern about spending $5,000 and then finding that the "material" (heroin)

was no good.  LEYBA assured YOUNG that it was the same heroin as before.  YOUNG

expressed frustration that he would lose his business if he kept dealing with LEYBA under these

circumstances.

53.     On or about March 5, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant MARK HIGHTOWER in which YOUNG told HIGHTOWER that

he was getting ready to bring drug proceeds to HIGHTOWER.  HIGHTOWER asked YOUNG if

YOUNG knew the brand name of heroin he wanted.  YOUNG told HIGHTOWER that he

needed 20 "Joy Ride," 30 "Brand New," 10 "Feel Good," and 40 "Chumpies."  HIGHTOWER

repeated this order to YOUNG.  YOUNG said that was right and that he needed them right now.

YOUNG told HIGHTOWER that he needed the "Joy Ride" and the "Chumpies" and gave

HIGHTOWER instructions for the remainder of the order.  HIGHTOWER told YOUNG that he

would go over there (to the cut house) and start stamping and that he would call the other cut

house workers and tell them to come.

     54.    On or about March 6, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant FRANK ROBINSON in which ROBINSON informed YOUNG that

ROBINSON was being admitted into the hospital.  ROBINSON then provided YOUNG the

phone number of another person who could sell heroin for YOUNG and informed YOUNG that

the other person had 17 bundles.  YOUNG offered to bring ROBINSON heroin at the hospital if

ROBINSON wanted it.

     55.    On or about March 19, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant JORGE LEYBA in which YOUNG told LEYBA that the heroin

"was nothin" (it was poor quality).  LEYBA asked if it was no good.  YOUNG said it was no

good and it was "recompressed."  LEYBA asked YOUNG if he had spoken to defendant

DANIEL PEROZO, and referred to PEROZO as "Danny."  YOUNG told LEYBA he had not.

     56.    On or about March 19, 2002, defendant TEDDY YOUNG had a telephonic

conversation with STEVEN SCOTT.  STEVEN SCOTT told YOUNG he only had 27 bundles

stamped "Gorilla."   YOUNG asked STEVEN SCOTT how many he had altogether.   STEVEN

SCOTT said they had packaged 20 "SU" ("SUV" stamp) and 30 (a call waiting tone made the

name stamped on the 30 unintelligible).   STEVEN SCOTT continued and said he had 30 "MID"

("Midnight" stamp) and said that was 80 bundles and a total of 107 bundles.   YOUNG told

STEVEN SCOTT to hold and took an incoming call from call waiting.

     57.     On or about March 20, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant STEVEN SCOTT in which STEVEN SCOTT confirmed that

YOUNG's father (defendant THEODORE YOUNG, SR.), wanted 30 more bundles.   YOUNG

informed STEVEN SCOTT that it was up to SCOTT if they wanted to complete the 30 bundles

that evening or the next day.

     58.     On or about May 30, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant JAMIL JOHNSON in which JOHNSON asked YOUNG for ten

more bundles of heroin.   YOUNG told JOHNSON he appreciated the reminder and to give him a

few minutes.

     59.     On or about May 30, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant JORGE LEYBA in which LEYBA informed YOUNG that he had

two or three hundred grams of heroin to give YOUNG.

     60.     On or about May 31, 2002, defendant TEDDY YOUNG had a telephonic

conversation with defendant STEVEN SCOTT in which STEVEN SCOTT admitted that not all

of the "Green" ("Green Light") had been packaged, and asked YOUNG if YOUNG wanted him

to prepare the "Best" ("Best Bet") next.   YOUNG told STEVEN SCOTT that his father

(defendant THEODORE YOUNG, SR.), only wanted ten (bundles), to do THEODORE's first,

and then get back to preparing the "Green."

61.     On or about May 31, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant HUGH ROGERS in which ROGERS told YOUNG to hurry up and meet him because ROGERS had customers waiting.  The two agreed to meet at the Hess (gas) station on 34th Street.

62.     On or about June 1, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant DAVID LEE in which LEE asked of the rest of the "Green" ("Green Light") was ready.  YOUNG informed LEE he was on his way to pick it up now and that the two could meet in 35 minutes.

63.     On or about June 1, 2002, at approximately 10:48 a.m., defendant TEDDY YOUNG met with defendants DANIEL PEROZO and JORGE LEYBA at the Home Depot on Roosevelt Blvd. for the purpose of receiving 300 grams of heroin from PEROZO and LEYBA.

64.     On or about June 1, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant JORGE LEYBA in which LEYBA inquired as to the quality of the heroin delivered to YOUNG earlier.  YOUNG told LEYBA "everything was good."  LEYBA told YOUNG that LEYBA would deliver 200 more grams of heroin to YOUNG on Monday morning.

65.     On or about June 2, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant DARRYL WARRING in which WARRING asked YOUNG for more bundles of heroin because WARRING had customers coming from Coatesville.  WARRING also told YOUNG that he had about "three stacks" ($3,000) of drug proceeds for YOUNG.

66.     On or about June 2, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant STEVEN SCOTT in which YOUNG instructed him to begin with the bundles stamped "Green Light" for DAVE (defendant DAVID LEE).  YOUNG mentioned how "Joy Ride" had been calling him (meaning defendant EDWARD BALL who prefers the "Joy Ride" stamp).

67.     On or about June 3, 2002, at approximately 7:46 a.m., defendant EDWARD BALL had a telephonic conversation with defendant TEDDY YOUNG in which BALL told YOUNG to hurry up with the delivery of heroin.

68.     On or about June 3, 2002, at approximately 8:44 a.m., defendant TEDDY YOUNG had a telephonic conversation with defendant RAFIQ YOUNG in which he told RAFIQ that he must deliver heroin to EDWARD BALL right away.

69.     On or about June 3, 2002, defendant RAFIQ YOUNG met with defendant EDWARD BALL outside of 5302 Wayne Avenue and delivered heroin to BALL.

70.     On or about June 3, 2002, defendant EDWARD BALL possessed 5 bundles (65 packets) of heroin, weighing approximately 2.8 grams, stamped "Joy Ride," and sold them to a person known to the grand jury for $500.

71.     On or about June 4, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant DAVID LEE in which the two attempted to make up new stamp names for heroin packets.  LEE suggested, "Red Hot," "Pretty Picture," "Scenic Group," and "Group One."  YOUNG commented that it was getting harder and harder to make up names.

72.     On or about June 4, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant SALEEM NUMAN in which NUMAN informed YOUNG that the

bundles stamped "All (All That)," "R1 (Route 1)," and "SU (SUV)" were completed.

73.     On or about June 4, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant RONNELL SCOTT in which RONNELL SCOTT told YOUNG that they had 28 more (bundles of heroin) to package and they would be done.  YOUNG then directed RONNELL SCOTT to prepare 15 "Chumpies."

74.     On or about June 5, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant FRANK ROBINSON in which ROBINSON warned YOUNG that the latest batch of heroin was no good.  ROBINSON asked YOUNG, "What the hell is the shit, man?" YOUNG told ROBINSON that there was nothing he could do about it now and that ROBINSON would have to wait until later.  ROBINSON went on to tell YOUNG that he "can't use that shit."

75.     On or about June 5, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant MARK HIGHTOWER in which HIGHTOWER told YOUNG that they were done (preparing bundles).  YOUNG told HIGHTOWER that YOUNG would be there (at the cut house) soon.

76.     On or about June 5, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant JORGE LEYBA in which YOUNG told LEYBA he would have "five or six" ($5,000 or $6,000) for him by tonight and that more was coming in.  LEYBA told YOUNG to get all the money tonight and to meet him and his friend (PEROZO) in the morning.

77.     On or about June 5, 2002, defendant TEDDY YOUNG had a telephonic conversation with defendant SALEEM NUMAN in which NUMAN said that he had finished preparing the "R1" ("Route 1" bundles of heroin) and was about to start the "Joy" ("Joy Ride").

YOUNG instructed NUMAN to prepare five "First Aid," but to prepare the 15 "Joy" ("Joy Ride") first.

78.     On or about June 6, 2002, defendant KENNETH MURRAY possessed approximately 72.8 grams of heroin, stamped "Route 1," "Joy Ride," "First Aid," and "Home Base" in the cut house which he owned, located at 5302 Wayne Avenue, Philadelphia, Pa.

79.     On or about June 6, 2003, defendant EDWARD BALL possessed 10 bundles of heroin stamped "Joy Ride," as well as a Baretta .25 cal. handgun, at his residence located at 1425 Venango Avenue, Philadelphia, Pa.

80.     On or about June 6, 2002, defendant TEDDY YOUNG possessed approximately 300 grams of heroin at his residence, located at 5132 Newhall Street, Philadelphia, Pa.

81.     On or about June 6, 2002, defendant TEDDY YOUNG possessed approximately 4.4 grams of heroin as well as a firearm, located in a hidden compartment in his vehicle, a Pontiac Bonneville, which was parked in front of his residence located at 5132 Newhall Street.

82.     On or about June 6, 2002, defendant THEODORE YOUNG, SR. possessed approximately 11.7 grams of heroin at his residence, located at 7519 Woolston St., Philadelphia, Pa.

83.     On or about June 6, 2002, defendant STEVEN SCOTT possessed approximately 12.06 grams of heroin at his residence, located at 7665 Washington Lane, Cheltenham, Pa.

All in violation of Title 21, United States Code, Section 846.

## COUNTS TWO THROUGH EIGHT

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about the following dates, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DAVID LEE,**
**a/k/a "Black Dave,"**

knowingly and intentionally distributed of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, with each transaction constituting a separate count, as follows:

| COUNT | DATE | ITEMS SOLD | APPROX. WEIGHT |
|-------|------|------------|----------------|
| 2 | 11/17/00 | 6 Bundles "Surfer Boy" | 2.07 grams |
| 3 | 11/22/00 | 4 Bundles "Surfer Boy" | 1.7 grams |
| 4 | 11/29/00 | 6 Bundles "Surfer Boy" | 2.9 grams |
| 5 | 12/07/00 | 10 Bundles "Best Bet" | 5.5 grams |
| 6 | 12/15/00 | 11 Bundles "Best Bet" | 6.0 grams |
| 7 | 1/19/01 | 20 Bundles "Quality" | 10.4 grams |
| 8 | 3/29/01 | 10 Bundles "Kung Fu" "SUV" | 5.4 grams |

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT NINE

**THE GRAND JURY FURTHER CHARGES THAT**:

At various times from at least in or around September 2001**,** to on or about June 6, 2002, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### KEN MURRAY

managed and controlled a building located at 5203 Wayne Avenue, Philadelphia, as an owner, and knowingly and intentionally rented, leased, and made available for use an apartment in that building for the purpose of unlawfully storing, manufacturing, and distributing heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 856(a)(2).

## COUNT TEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 6, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**FRANK ROBINSON**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that defendant ROBINSON advised defendant YOUNG that ROBINSON had

supplied another person with heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 15, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**EDWARD BALL**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the need to replace poor quality

heroin for defendant BALL's customer.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 15, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**THEODORE YOUNG, SR.,**
**a/k/a "Curly,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant THEODORE

YOUNG, SR.'s request for additional bundles of heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 17, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**HUGH ROGERS,**
**a/k/a "Huey,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant YOUNG providing

defendant ROGERS with heroin with a different stamp.

In violation of Title 21, United States Code, Section 843(b).

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 18, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**AMILCAR DELACRUZ,**
**a/k/a "Boca Chula,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the money defendant YOUNG

owed to defendant DELACRUZ for heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 27, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**SALEEM FAREED NUMAN,**
**a/k/a "Lane,"**
**a/k/a "Numatic,"**
**a/k/a "Geez,"**
**a/k/a "Leem,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the packaging of heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT SIXTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 28, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**RAFIZ YOUNG,**
**a/k/a "Fiq,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant RAFIQ YOUNG

transporting heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT SEVENTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 5, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**DANIEL PEROZO**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant PEROZO coming to

Philadelphia to supply defendant YOUNG with heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT EIGHTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 19, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, and elsewhere, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**JORGE LEYBA**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the delivery of heroin and the

payment of drug proceeds.

In violation of Title 21, United States Code, Section 843(b).

## COUNT NINETEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 18, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**MARK HIGHTOWER**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the packaging of heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 26, 2001, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**KENNETH MURRAY**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant YOUNG retrieving

heroin that defendant MURRAY left out for YOUNG.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-ONE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 8, 2002, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**WILLIAM McCOY**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, defendant McCOY used the telephone to inform defendant YOUNG that

MCCOY was collecting drug proceeds to provide to YOUNG, and to inform YOUNG that the

heroin had been sold.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 23, 2002, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**ARTAVIUS COLEMAN,**
**a/k/a "Tay,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss defendant YOUNG supplying

defendant COLEMAN's associate with heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about February 26, 2002, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**JAMIL JOHNSON,**
**a/k/a "Jamil Judge,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the quantity of heroin defendant

YOUNG had provided to defendant JOHNSON.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 19, 2002, in Philadelphia, in the Eastern District of

Pennsylvania, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**STEVEN SCOTT,**
**a/k/a "Stevie Wonder,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the packaging of heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 2, 2002, in Philadelphia, in the Eastern District of Pennsylvania,

defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**DARRYL WARRING,**
**a/k/a "Omar,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss the fact that defendant

WARRING had $3,000 of drug proceeds and that defendant WARRING needed additional

heroin for a customer coming from out of town.

In violation of Title 21, United States Code, Section 843(b).

## COUNTS TWENTY-SIX AND TWENTY-SEVEN

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about the following dates, in the Eastern District of Pennsylvania,

defendant

### EDWARD BALL

knowingly and intentionally distributed a mixture or substance containing a detectable amount of

heroin, a Schedule I controlled substance, with each date constituting a separate count:

| COUNT | DATE | ITEMS SOLD | APPROX. WEIGHT |
|-------|------|------------|----------------|
| 26 | 1/24/02 | 5 Bundles "Joy Ride" and "Midnight" | 2.9 grams |
| 27 | 6/3/02 | 5 Bundles "Joy Ride" | 2.8 grams |

All in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C).

## <u>COUNT TWENTY-EIGHT</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 3, 2002, in Philadelphia, in the Eastern District of Pennsylvania,

defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**DAVID LEE,**
**a/k/a "Black Dave,"**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that, the defendants used the telephone to discuss new stamp names to place on

bundles of heroin.

In violation of Title 21, United States Code, Section 843(b).

-44-

## COUNT TWENTY-NINE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 4, 2002, in Philadelphia, in the Eastern District of Pennsylvania,

defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young," and**
**RONNELL SCOTT**

knowingly and intentionally used a communication facility, that is a telephone, in facilitating and

furthering the conspiracy to distribute heroin, in violation of Title 21, United States Code,

Section 846, in that the defendants used the telephone to discuss the packaging of heroin.

In violation of Title 21, United States Code, Section 843(b).

## COUNT THIRTY

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 6, 2002, in Philadelphia, in the Eastern District of

Pennsylvania,

defendant

**TEDDY YOUNG,**
**a/k/a "T. Turan Young,"**

knowingly possessed a firearm, that is, a derringer handgun, in furtherance of a crime of a drug

trafficking crime for which he may be prosecuted in a court of the United States, that is,

possession with the intent to distribute a controlled substance in violation of Title 21, United

States Code, Section 841(a)(1).

In violation of Title 18, United States Code, Section 924(c)(1).

## <u>COUNT THIRTY-ONE</u>

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about June 6, 2002, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**TEDDY YOUNG,**
**a/k/a "T. Turan Young,"**

knowingly and intentionally possessed with intent to distribute in excess of 100 grams, that is,

approximately 300 grams, of a mixture or substance containing a detectable amount of heroin, a

Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT THIRTY-TWO

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about June 6, 2002, in Philadelphia, in the Eastern District of Pennsylvania,

defendant

**THEODORE YOUNG, SR.,**
**a/k/a "Curly,"**

knowingly and intentionally possessed with intent to distribute a mixture or substance containing

a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## <u>COUNT THIRTY-THREE</u>

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about June 6, 2002, in Philadelphia, the Eastern District of Pennsylvania, defendant

## **EDWARD BALL**

knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT THIRTY-FOUR

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about June 6, 2002, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**KENNETH MURRAY**

knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT THIRTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT**:

On or about June 6, 2002, in Philadelphia, in the Eastern District of Pennsylvania, defendant

**STEVEN SCOTT,**
**a/k/a "Stevie Wonder,"**

knowingly and intentionally possessed with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

    1)  As a result of the violations of Title 21, United States Code, Sections 846 and

841(a)(1) set forth in Counts 1-8, 26-27, and 31-35 of this indictment, defendants

**TEDDY YOUNG,**
**a/k/a "T. Turan Young,"**
**AMICLAR DELACRUZ,**
**a/k/a "Boca Chula,"**
**JORGE LEYBA**
**DANIEL PEROZO**
**STEVEN SCOTT,**
**a/k/a "Stevie Wonder,"**
**RONNELL SCOTT**
**SALEEM FAREED NUMAN,**
**a/k/a "Lane,"**
**a/k/a "Numatic,"**
**a/k/a "Geez,"**
**a/k/a "Leem,"**
**MARK HIGHTOWER**
**DAVID LEE,**
**a/k/a "Black Dave,"**
**EDWARD BALL**
**HUGH ROGERS,**
**a/k/a "Huey,"**
**JAMIL JOHNSON,**
**a/k/a "Jamil Judge,"**
**DARRYL WARRING,**
**a/k/a "Omar,"**
**WILLIAM McCOY,**
**a/k/a "William Rogers,"**
**a/k/a "Slug,"**
**KEN MURRAY**
**THEODORE YOUNG, SR.,**
**a/k/a "Curly,"**
**RAFIQ YOUNG,**
**a/k/a "Fiq,"**
**ARTAVIUS COLEMAN,**
**a/k/a "Tay," and**
**FRANK ROBINSON**

shall forfeit to the United States under Title 21, United States Code, Section 853:

(a)    any and all real or personal property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the violation of Title 21, United States Code as charged in this indictment, including but not limited to;

i) Currency in the approximate amount of $32,304 taken from 5132 Newhall Street, Philadelphia, Pa;

ii) Currency in the approximate amount of $1,546 taken from 7519 Woolston Street, Philadelphia, Pa.

iii) Currency in the approximate amount of $9,334 taken from 1425 Venango Street, Philadelphia, Pa.

iv) the parcel of real property located at 5239 Knox Avenue, Philadelphia, Pa., in the name of Gamela Young; and

(b)    any and all real or personal property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violations of Title 21, United States Code as charged in this indictment, including but not limited to:

i) the parcel of real estate located at 5302 Wayne Avenue, Philadelphia, Pa., in the name of Kenneth Murray.

ii) the parcel of real estate located at 5357 Wingohocking Terrace, Philadelphia, Pa., in the name of David Lee.

iii) the parcel of real estate located at 5132 Newhall Street, Philadelphia, Pa, in the name of Theodore Young and Laura H. Young.

2)      If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

        a)      cannot be located upon the exercise of due diligence;

        b)      has been transferred or sold to, or deposited with, a third party;

        c)      has been placed beyond the jurisdiction of the Court;

        d)      has been substantially diminished in value; or

        e)      has been commingled with other property which cannot be divided

              without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to

forfeiture.

All in violation of Title 21, United States Code, Section 853.


**A TRUE BILL:**


_____

**GRAND JURY FOREPERSON**


_____

**PATRICK L. MEEHAN**
**UNITED STATES ATTORNEY**

-54-